## Rumford Falls Boom Company

### vs.

## Rumford Falls Paper Company.

### Cumberland.  Opinion January 6, 1902.·

*Accruing of Action.  Assumpsit.  Rent.  Boom Privilege.  Specialty.  Auditor.*
*R. S., c. 94, § 10.  Spec. Laws, 1887, c. 124; 1891, c. 148.*

By an instrument under seal, the parties made an alternative contract with each other, relative to sorting, booming, holding and delivering the defendant's logs which should from time to time come into the plaintiff's boom. By one alternative, it was provided that under certain contingencies, the defendant should have the right, if it so elected, to take possession and exercise control of the boom, piers and boomage rights of the plaintiff, and "operate the business of receiving, sorting, holding and delivering logs and lumber in the same manner as said Rumford Falls Boom Company is now required to carry on said business."  The contract further provided that in the event of the defendant's "exercising the rights aforesaid, then it shall collect the expense of receiving, holding, sorting and delivering such logs and lumber from such other firms and corporations" as have acquired rights relative to such booming business, "which expense shall include the matters and things only for which said Rumford Falls Boom Company would have been permitted to charge in the event of its operating said business, and said Rumford Falls Paper Company shall pay said Rumford Falls Boom Company its proportionate part of said 10 per cent upon said capital stock."  Elsewhere in the contract it appears that "said 10 per cent of said capital stock," meant 10 per cent each year on the capital stock of the plaintiff company, which it was agreed should at all times equal, but at no time exceed, the net cost of the plaintiff's booms, piers, and so forth, including renewals, improvements, and additions, but excluding ordinary repairs.  The term "proportionate part of said 10 per cent" is elsewhere defined to be a proportion determined by the proportion which the defendant's logs and other lumber handled at that boom in any year bore to the whole amount of logs and other lumber so handled.  The defendant, by virtue of the contract, operated the booms in 1893, 1894, 1895 and 1896.  In 1894 and in 1895 all the logs and lumber handled belonged to the defendant.  In 1893, two-thirds and in 1896, nine-tenths of the logs and lumber handled belonged to the defendant.  The plaintiff's boomage works were already completed when the contract was made, but no renewals, improvements or additions were made by it subsequently.

*Held ;* that by virtue of R. S., c. 94, § 10, an action of assumpsit will lie to recover the unpaid rental, though the parties have never been able to agree upon the items which constitute the "net cost;" also that an action begun in 1898 is not premature, though there had been no "determination" by the parties of the net cost of the works or of the proportion of rent chargeable to the defendant.

An auditor to whom the case was referred found that the net cost of the works was $29,300. The court is of opinion, that as to this matter, the report of the auditor, which is prima facie proof, has not been impeached, rebutted, disproved or controlled by the other evidence in the case, and that it must stand as decisive.

*Held ;* that the plaintiff is entitled to recover of the defendant the full ten per cent of the "net cost," or $2930, for each of the years 1894 and 1895, when the defendant owned all of the logs handled, and two-thirds of the ten per cent, or $1953.33, in 1893, and nine-tenths of the ten per cent, or $2637, in 1896, these being the "proportionate parts," ascertained from the proportions which defendant's logs bore to all the logs handled in those years; and that the defendant is entitled to no more rental. Such is the effect of the explicit language of the contract.

*Held;* that the contract, properly construed, furnishes no basis for the recovery by the plaintiff on account of its claim for annual depreciation of the booms. The plaintiff had agreed with its predecessor in title at all times to "maintain in good order and repair said booms and piers" substantially as they were constructed. The plaintiff had also agreed with its predecessor that it would "without discrimination or preference receive, sort, hold, boom and deliver the logs and other lumber of all persons" at all times thereafter. The defendant, however, in these respects had agreed with the plaintiff only to "operate said business as said Rumford Falls Boom Company is now required to carry on said business." *Held;* that the defendant's agreement related only to the latter duty owed by the plaintiff to its predecessor, viz : the operating of the business, and not to the maintenance of the booms and piers in good order and repair. And were it otherwise, the plaintiff's remedy for this alleged breach of contract would be covenant broken, and not assumpsit, as in this case.

On report.    Judgment for plaintiff.

Assumpsit on account annexed under R. S., c. 94, § 10, for rent of the booms and boom privileges of the plaintiff corporation at Rumford Falls on the Androscoggin river. There were items of 12 1-2 per cent for depreciation, and also items of interest.

The contract under which defendants had occupied and operated the booms was under seal. The case was sent to an auditor, at the hearing before whom defendant did not appear. The report found $34,140.30 in favor of the plaintiff. The auditor also found the net

cost of the boom works was $29,300. Defendant filed exceptions to the report in which was incorporated a motion to set it aside. In this court below, the general issue was plead by defendant with a brief statement containing several items, among which was one setting out in effect that the matters referred to in the writ were embraced in a sealed instrument in which no liquidated sum was stated as rental; and that, therefore, plaintiff should be confined to his action on the covenant for damages to be determined according to the terms of the agreement, the remedy in assumpsit being misconceived.

There was also an item in the brief statement setting out in effect that said sealed instrument contained no provision for payment of anything to plaintiff for depreciation of said boom, but that ten per cent on the net cost of said boom including repairs, etc., was specified in said contract as the only pay the plaintiff was to receive as liquidated and stated rental or any rental of said boom.

Incorporated with the brief statement was a motion for a non-suit and one to set aside the auditor's report.

Those portions of the contract concerning the construction of which there was any controversy are set forth in the opinion.

*J. W. Symonds, D. W. Snow, C. S. Cook, C. L. Hutchinson; H. B. Cleaves, C. S. Perry; George D. Bisbee,* for plaintiff.

Defendant had no right of exception to the auditor's report. By R. S., c. 82, § 7, an auditor's report may be re-committed, and the auditor may be discharged and another appointed. The parties to the suit have no power in the premises. Whatever action is taken under this statute must be ordered by the presiding justice within his discretion.

In the present case the defendant is not a party aggrieved under R. S., c. 77, § 51, because he voluntarily and unconditionally suffered a default before the auditor, and cannot, therefore, take exceptions to the auditor's action or to the ruling of the presiding justice thereon. *Woodman* v. *Valentine,* 22 Maine, 401 ; *Patten* v. *Starrett,* 20 Maine, 145, 147.

The commission under which the auditor acted follows the language of R. S., c. 82, § 69, and he was not called upon to state matters of law or evidence in his report. *Jones* v. *Stevens,* 5 Metcalf,

373 ; *Newell* v. *Chesley,* 122 Mass. 522. The action was properly brought in assumpsit under R. S., c. 94, § 10.

The auditor's report makes out a prima facie case for the plaintiff which must be overcome by evidence produced by the defendant. The defendant has failed to do this and the auditor's report should stand.

*W. H. Clifford, E. C. Verrill, Nathan Clifford ; Benj. Thompson,* for defendant.

The action must be dismissed. It is assumpsit when it should have been covenant. The amount was not liquidated. Counsel cited : 1 Chitty on Pleading, 16th Am. Ed. 13, 116, 121, 129, 132. *Hinkley* v. *Fowler,* 15 Maine, 285; *Dunn* v. *A. E. Motor Co.,* 92 Maine, 165 ; *Manning* v. *Perkins,* 86 Maine, 419 ; *Pope* v. *The Machias Water Power Co.,* 52 Maine, 535.

Plaintiff should be non-suited. *Webber* v. *School District,* 45 Maine, 299; *Whittemore* v. *Merrill,* 87 Maine, 456.

Motion for non-suit may be made after defendant has introduced evidence. *White* v. *Bradley,* 66 Maine, 254 ; *Cooper* v. *Waldron,* 50 Maine, 80, 82.

The plaintiff has blended in the same count covenant and assumpsit and it would be erroneous to give judgment for plaintiff thereon. Gould's Pleading, pp. 214, 215, 219, 289, 290 ; Chitty on Pleading, pp. 199, 222, 315, 353*, 469*, 475. *Richardson* v. *Welcome,* 6 Cush., 331 ; *Moore* v. *Knowles,* 65 Maine, 497.

When the plea sets up misconception, abatement is unusual and unnecessary. *Benthall* v. *Hildreth,* 2 Gray, 288 ; *Franklin Savings Institution* v. *Reid,* 125 Mass. 365, 367.

The points of a brief statement are equivalent to one or more special pleas in bar. *Potter* v. *Titcomb,* 16 Maine, 425 ; *Moore* v. *Knowles,* 65 Maine, 497.

Any charge for depreciation is excluded by the terms of the covenant into which the parties entered relative to use of boom by defendant.

Even if the action were sustainable, the plaintiff could only recover—not ten per cent of the cost of booms and piers, etc., which he has sued for,—but only such proportion of ten per cent of such cost as the covenant provides defendant shall pay.

Supposing, for the sake of this point, that the action could be maintained, plaintiff cannot recover on the merits because he has failed to show in his evidence the net cost of booms and piers yearly and the proportion of ten per cent on cost of booms and piers that defendant should pay, and has failed to show that the same has ever been determined.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

SAVAGE, J. Assumpsit for the recovery of the rental of plaintiff's boom for the seasons 1893, 1894, 1895 and 1896, and twelve and one-half per cent of the net cost of the booms for depreciation each year. The case was first sent to an auditor, who reported in favor of the plaintiff for the full amount of the claims sued, with interest, amounting in all to $30,641.94 at the date of the writ, January 12, 1898. The case now comes before us on report of the evidence below, including the report of the auditor. That report affords prima facie proof that the plaintiff is entitled to recover the full amount in suit, and unless impeached, rebutted, disproved or controlled, it should be decisive. *Howard* v. *Kimball*, 65 Maine, 308. And we think that the auditor's report, in so far as it depends upon a correct determination of the facts, is not impeached, rebutted or disproved by the evidence. But in so far as it depends upon the correct construction of the contract on which this right of action is based, we think it is controlled and should be modified in certain particulars.

The rights of the parties depend upon and are controlled and limited by the provisions of a certain contract, under seal, entered into between them on July 25, 1893. Previous to that time, in 1887, and in 1891, the legislature had given to Hugh J. Chisholm and Charles D. Brown and their assigns the right to build dams, piers and booms in the Androscoggin River above and below the Great Falls at Rumford, for booming and holding booms, spars and other lumber, and to demand and receive a reasonable toll from the owners of logs boomed by them. Private and Special Laws of 1887,

c. 124; Private and Special Laws of 1891, c. 148. In 1890, Chisholm and Brown conveyed these boomage rights to the Rumford Falls Power Company, and in 1892-1893, that company built the piers and booms which are in controversy in this suit. After they were completed, the Rumford Falls Power Co., July 12, 1893, conveyed them, with boomage rights and privileges, to the plaintiff. Then, thirteen days later, the plaintiff and defendant entered into the sealed contract which is now before us for construction.

By one set of its provisions, the plaintiff agreed to boom, sort, hold and deliver all of the defendant's logs which came into the plaintiff's boom; and in consideration thereof, the defendant agreed to pay annually to the plaintiff "the net expense of delivering its logs and other lumber as herein provided, and its proportion of the net expense of holding, sorting and booming all logs and other lumber coming or driven into said booms each year plus its proportion of ten per cent upon the capital stock of the Rumford Falls Boom Company then issued and outstanding, which capital stock shall at all times equal, but not at any time while this agreement is in force, exceed the net cost, including renewals, improvements and additions, but excluding ordinary repairs of said booms and piers, such proportion to be determined by the proportion which its logs and other lumber handled at Rumford Falls that year bears to the whole amount of logs and other lumber handled by plaintiff in these booms."

By a further provision in the contract, it was agreed that if the defendant should, in any one season, own or control the largest quantity [that is to say, larger than the quantity of any other log owner] of logs and lumber to be received, held, sorted and delivered at these booms, then for that season, and for subsequent seasons, so long as the same condition continued, the defendant should have the right, if it so elected, to take possession and exercise control of the boom, piers and boomage rights of the plaintiff, and "operate the business of receiving, sorting, holding and delivering logs and lumber in the same manner as said Rumford Falls Boom Company is now required to carry on said business."

It is conceded that the condition provided for in this last paragraph did arise, and that the defendant did take possession and exercise

control of the plaintiff's piers and booms, and did operate the boom business in said booms, for the seasons of 1893, 1894, 1895 and 1896.

And the contract further provided that in the event of the defendant's "exercising the rights aforesaid, then it shall collect the expense of receiving, holding, sorting and delivering such logs and lumber from such other firms and corporations" as have acquired rights relative to receiving, sorting, holding and delivering logs and lumber, "which expense shall include the matters and things only for which said Rumford, Falls Boom Company would have been permitted to charge in the event of its operating said business, and said Rumford Falls Paper Company shall pay said Rumford Falls Boom Company its proportionate part of said 10 per cent upon said capital stock." This last provision clearly relates back to the earlier clause in the contract touching the compensation to be paid by the defendant in case the plaintiff operated the business.

This contract as a whole is in the alternative. It provided for a contingency when the boom business might be operated by the plaintiff, and for another contingency when it might be operated by the defendant. We are only concerned with the latter contingency. It did arise, and the defendant did take possession and carry on the business. When this contingency arose, and the defendant exercised the option of taking possession and operating the business, the contract, as we construe it, became effective as a lease. The plaintiff was the lessor, the defendant was the tenant, and the agreed rental was a proportional part of ten per cent of the net cost of the booms, piers and other boomage works of the plaintiff, including renewals, improvements and additions, but excluding ordinary repairs, which proportional part was to be determined by the proportion which the logs and lumber of the defendant bears in any year to the whole amount of logs and other lumber handled at Rumford Falls that year in and by such boom.

Such being the rights of the parties with respect to rental, and the rent not having been paid, is the plaintiff pursuing a proper remedy? The learned counsel for the defendant strenuously urges that this action is both misconceived and premature; that the action should have been covenant broken rather than assumpsit; and that even if

assumpsit might in general lie for the recovery of rent, under R. S., c. 94, § 10, yet that it will not lie in this case until the net cost of the plaintiff's works has been determined by mutual agreement, and so likewise of the proportionate share of the ten per cent to be paid ; that the determination of these facts is a prerequisite to a right of action in assumpsit, and that in case of failure of such determination, the plaintiff's only remedy is by action for damages for breach of covenant. The defendant further contends that until such determination there is nothing due *as rent,* and that the statute does not apply unless the rent due is a definite and liquidated sum.

On the contrary, we think the statute referred to is applicable to the facts of this case. It provides that "sums due for rent on leases under seal or otherwise may be recovered in an action of assumpsit." To be sure, the recovery must be for a "sum due." And it may be conceded, following the analogy of actions of debt for rent reserved in leases under seal, that the sum must be certain, or one that can be made certain. Taylor's Landlord and Tenant, 6th Ed. § 616. But that does not mean that the actual amount due must have been agreed upon. It is sufficient if the definite elements of which it is composed are agreed upon, or if a certain basis of computation is agreed upon. What remains will be merely a computation. Nor does the basis become indefinite or uncertain, in legal contemplation, because the parties may afterward disagree about the items which composed it.

In this case the basis for rental agreed upon was certain, or could be made certain by computation. It was ten per cent of the net cost of the boomage works then just completed. When this contract was made, every pier had been laid, every boom stick had been strung, every dollar had been expended. The net cost was then ascertainable by computation. True the parties might afterwards dispute about what items should enter into the net cost. The lessor might claim more than the tenant would be willing to allow. Controversy and litigation might ensue. But that would not alter the fact. The net cost had become fixed, and was subject to no contingencies. And the "net cost," which was the basis for computation of rent at the date of the lease, remained unchanged during the entire period of the defendant's occupancy. It does not appear, and it is not claimed

that "any renewals, improvements and additions" were made at the expense of the lessor during the tenancy. There was, therefore, no uncertainty in this respect in any year's rental.

But the proportion which the defendant's logs bore to the whole amount of logs handled differed from year to year. Still, if, as the defendant claims, it is liable in any event only for its proportion of the ten per cent of the net cost, that proportion was easily ascertainable by count or measurement. In that case the rent would be fixed each year by an ascertainable, computable proportion. We, therefore, think that this ground of defense fails, and that assumpsit is maintainable.

Nor is the action premature. There is nothing in the contract which can be construed as requiring a " determination," by mutual agreement, of the net cost of the works, or of the proportion of rent chargeable, as a prerequisite to right of action. The contract uses the word " determine " or an equivalent expression only once, and that is when it says that the defendant's proportion of the net expense of booming and of the ten per cent of the net cost are "to be determined by the proportion" which its logs bear to the whole amount of logs handled. The word here means simply ascertained or computed. It certainly does not imply any mutual action or agreement by the parties. It was agreed that settlements were to be made on or before the first day of December in each year. The annual rental became due, therefore, on the first day of each December, and suit begun afterwards would not be premature.

The right to maintain the action being settled, the remaining question is, how much is recoverable. The first disputed element in the amount of rental is the net cost of the construction of the booms and piers. The auditor must have found the net cost to be $29,300, of which ten per cent would be $2930. We do not think the prima facie effect of this finding is overcome by any evidence in the case.

We will notice some of the objections. Among other things, the defendant objects to the allowance of the cost of a stiff boom, on the ground apparently that it was or became useless. This boom, however, was a part of the structure when it was leased to the defendant, and its cost necessarily entered into the entire net cost. The con-

tract did not exclude from the net cost, the cost of such things as did
not turn out to be useful.

Again, the defendant objects to the price charged for stone used in
filling certain piers, on the ground that the Rumford Falls Power
Company, which built the piers, had taken the stone from an excava-
tion which they made in building the dam at Rumford; that the
stones excavated and afterwards used in the piers, represented a part
of the expense of building the dam, and should not be charged to the
booms.   But from whatever source the Rumford Falls Power Com-
pany obtained these stones, it does not appear that they have charged
more than it would cost to obtain other stone for the same purpose,
or more than they were fairly worth, under the circumstances.   Had
there been no use for these stones, they might have been worthless,
or even it might have cost the company something to get them out
of the way.   But a use for them appeared, and the company had a
right to take advantage of it.

Again, the defendant objects to a charge of engineering, on two
grounds; first, that the work was not well done, and secondly, that
the engineer was the regular engineer of the Rumford Falls Power
Company in its other business, and received a stated salary from
them, and that nothing extra was paid to him on account of engi-
neering done for the boom.   Neither ground is tenable.   The work
had all been done before this contract had been made, and, good or
bad, had entered into the net cost.   And if the Power Company
employed its regular engineer in this outside, extra work, it surely
may charge this extra service on the booms to the boom account.

Such are the chief objections offered to the net cost as found by
the auditor.   It is not necessary that we should discuss the other
objections specifically.   We have carefully examined them, and we
find them unavailing.

It is plain that the entire annual rental of the booms and piers
was conceived to be ten per cent of their net cost.   If the plaintiff
operated the business, the defendant was to pay its proportion of
the ten per cent, and presumably the other log owners using the
boom would pay the remainder.   So if the defendant operated the

business, it was to pay its "proportionate part of said ten per cent." What is that proportionate part?

Now the case shows that the defendant owned all of the logs handled in 1894 and 1895, but not all in 1893 and 1896. Nevertheless, the plaintiff contends that it is entitled to recover the entire ten per cent of the defendant for the years 1893 and 1896, as well as for the years 1894 and 1895. The plaintiff's theory is that the contract fairly construed means that when the defendant was sole tenant and in sole possession and operation of the booms, and when it alone was entitled to collect payment from the other owners of logs, the "proportionate" part of the ten per cent would be the whole, that any other construction would put the booms and piers in the possession of the defendant, with authority to collect from the owners of logs boomed, and leave the plaintiff no remedy whatever. This construction, unfortunately for the plaintiff, has little in the contract to stand upon, and we cannot extend or enlarge the contract. The contract contemplates that if the defendant took possession at all, it was to take sole possession, and that its right to take possession was not to be deferred until it owned all of the logs to be handled, but only until it owned the major part of them. By taking possession, it assumed, so the contract in substance provides, the duties incumbent upon the Boom Company, of booming the logs of other owners. It was obliged to receive, sort, hold and deliver their logs and lumber. Now all through this contract the elements of expense to the log owner are twofold; first, the net expense of operating for that year, and secondly, ten per cent of the capital stock, or net cost of structures. Such would have been the basis of settlement between these parties, in the event that the plaintiff had operated the business. But when the defendant took possession, it paid all operating expenses, and so was entitled to collect from others their shares of the operating expenses. As the contract says, it "shall collect the expense of receiving, holding, sorting and delivering such logs and lumber from such other firms and corporations." That is, it could so reimburse itself for expenses incurred on account of the logs and lumber of others. This language by its very terms relates to current operating expenses. It relates to the expense of receiving, holding,

sorting and delivering logs and lumber.  It does not authorize the
defendant to collect from others any part of the ten per cent, for that
is not an operating expense, but is an increment to capital.  Nor can
this construction be enlarged by the sentence in the same paragraph
which reads, "which said expense shall include the matters and
things only which said Rumford Falls Boom Company would have
been permitted to charge in the event of its operating said business."
This is an expression of limitation, rather than enlargement.  If any
doubt remains, we think it should be removed by a consideration of
the final clause of this paragraph, the clause which embodies the
defendant's agreement to pay rent.  What is that clause and what is
that agreement?  It is this :—"And the said Rumford Falls Paper
Company shall pay said Rumford Falls Boom Company its propor-
tionate part of said ten per cent upon said capital stock as aforesaid."
This is express, and clear, and definite.  As the defendant is not
bound, or even authorized by the contract, to collect proportionate
parts of the ten per cent from others, so it has not bound itself to
pay any more than its own proportionate part of the ten per cent.
Had it appeared, however, that the defendant had actually received
proportions of this ten per cent from others, there is no doubt it
might have been liable for it in this action under the count for money
had and received.  But that fact does not appear.  The contrary,
rather, does appear.

We do not need here to consider how the plaintiff is to collect the
balance of the ten per cent.  The original charter authorizes the col-
lection of a "reasonable toll," but how so much of "reasonable toll"
as exceeds current operating expenses may be collected of other log
owners during the existence of this contract, is not before us now.

The contract defines "proportionate part" to mean the proportion
which the defendant's logs bore to all the logs.  The evidence is not
full or satisfactory as to what that proportion was, but it is all that
the parties have given us.  One witness, introduced by the plaintiff,
swore that in the season of 1893 two-thirds of the logs handled
belonged to the defendant, and one-third to others; that in 1894 and
1895 all belonged to the defendant; and that in 1896 nine-tenths
belonged to the defendant and one-tenth to others.  Although this

was merely an estimate of the witness, it appears that this witness was in position to be able to make a fair estimate. Besides, his estimate is not disputed in this case. For these reasons, we assume it to be true.

Accordingly, the plaintiff is entitled to recover upon its items of rent as follows:—

| | |
|---|---:|
| For the season of 1893, two-thirds of $2930, | $1,953.33 |
| For the season of 1894, | 2,930.00 |
| For the season of 1895, | 2,930.00 |
| For the season of 1896, nine-tenths of $2930, | 2,637.00 |
| | $10,450.33 |

Upon these sums, we think the plaintiff may recover interest from the times they severally became due under the contract, namely, December first each year. *Swett* v. *Hooper*, 62 Maine, 54; *Maine Central Institute* v. *Haskell*, 73 Maine, 140; Taylor's Landlord and Tenant, 6th Ed., § 615.

The plaintiff has also sued to recover for depreciation of the booms each year. And it bases its right to recover for depreciation upon the clause in the contract which provides that the defendant "shall have the right if it so elects to take possession and exercise control of the booms and piers and other property and rights of said Rumford Falls Boom Company and *operate said business as said Rumford Falls Boom Company is now required to carry on said business.*" What was the manner in which the Rumford Falls Boom Company was required to carry on said business? In answer, the learned counsel for the plaintiff call our attention to a provision in the deed of these piers and booms from the Rumford Falls Power Company to the plaintiff, which reads as follows:—"This deed is made, given and accepted upon the express condition · that said Rumford Falls Boom Company, its successors and assigns, shall and will at all times hereafter maintain in good order and repair said booms and piers substantially as at present constructed, and will and shall at all times hereafter, and without discrimination or preference, receive, sort, hold, boom and deliver the logs and other lumber of all persons, firms or corporations doing business at Rumford Falls upon the

request of such persons, firms or corporations." The plaintiff claims that the covenant relied upon in the contract relates to the duty imposed upon the plaintiff by the deed to keep the booms and piers in good order and repair. The argument of the plaintiff seems to be that by allowing the booms to grow old and depreciate, the defendant has not kept its agreement, and that damages for the breach are recoverable.

Even if the plaintiff's premises are correct, we think it would be a sufficient answer to say that the remedy for such a breach would be covenant broken, and not assumpsit. *Dunn* v. *Auburn Electric Motor Co.*, 92 Maine, 165. But as the question has been fully argued, we go farther, and say that we think that the construction placed by the plaintiff on this clause in the contract is not the correct one. By the deed referred to, the plaintiff was placed under two obligations. One was to maintain the booms and piers in good order and repair, and the other was to receive, sort, hold, boom and deliver logs and other lumber without discrimination or preference. The latter relates to the manner of operating the business. The clause in the contract relied upon by the plaintiff seems to relate specifically to this latter duty. It says in so many words, that the defendant shall "operate the business of receiving, sorting, holding and delivering logs and lumber in the same manner as said Rumford Falls Boom Company is now required to carry on said business." There are no apt words by which this obligation can be extended to the duty of keeping the booms in good order and repair. We do not think such a construction is permissible. The auditor, therefore, erred in allowing the items for depreciation, and his report must be controlled by the true construction of the contract. The plaintiff is entitled to recover only for the rent and interest thereon, as hereinbefore stated.

> *Judgment for plaintiff for $10,450.33, and interest, on the several instalments of rent from the times they respectively became due, viz: on $1953.33 from Dec. 1, 1893; on $2930 from Dec. 1, 1894; on $29.30 from Dec 1, 1895; and on $26.37 from Dec. 1, 1896.*